No. 6455.

RHODA E. WHITE vs. MYRA CLARK GAINES.  ON RULE TO TRAVERSE ANSWERS OF GARNISHEES.

When the principal parties, and the thing demanded, in two suits, are different, the judgment in one can not be pleaded as *res adjudicata* in the other suit.
A simulated transfer of property will not protect it from the pursuit of the real owner's creditors.

APPEAL from the Fifth District Court, parish of Orleans.  *Cullom*, J.

*R. De Gray*, and *Semmes & Mott*, for plaintiff in rule.
*Finney & Miller*, for garnishees.
*J. Q. A. Fellows*, for defendant in rule, appellant.

The opinion of the court was delivered by

MANNING, C. J.  In 1872 the plaintiff obtained judgment against the defendant in the Fifth District Court of New Orleans for thirty thousand dollars with interest, with the right of issuing execution for twenty thousand one hundred and five 20-100 dollars, being fifteen per centum of the amount of money and property proven to have been recovered, collected, and realized by the defendant since May 30th. 1864, as heir, daughter, and devisee of Daniel Clark, and reserving to plaintiff the right to take out execution from time to time for fifteen dollars out of every hundred dollars that may hereafter be recovered or realized, or which may heretofore have been recovered or realized, of property of Daniel Clark's estate, until this judgment is fully satisfied.

The defendant appealed from this judgment, J. Q. A. Fellows being the surety on her suspensive appeal bond.  Some time afterwards, and before the appeal was heard, objection was made in the proper form to the sufficiency of the surety, and upon order being made to furnish additional security, J. H. Oglesby, Louis Schneider, Patrick Irwin, and W. S. Pike became sureties on the defendant's appeal bond.  The appeal was unsuccessful.  This court affirmed the judgment.

Suit was then instituted on these appeal bonds, and judgment was rendered against the five sureties—Fellows, Oglesby, Schneider, Irwin, and Pike—against Fellows for twenty thousand one hundred and five 20-100 dollars, and against the four others for the same sum, to be dis-

charged by the payment of the amount for which each had obligated himself. A suspensive appeal was taken from this judgment, and Oglesby and Schneider became sureties for Fellows on his appeal bond. The appeal resulted as did the first, and the four solvent sureties paid each $5,323.20 in satisfaction of the judgment. Fellows paid nothing. ✓

In November 1875, additional property or money having been realized by defendant, another execution was obtained by plaintiff for eighteen thousand five hundred and twelve 96-100 dollars, and process of garnishment was issued, and interrogatories were addressed to the city of New Orleans, S. M. Todd, A. Schreiber, J. Q. A. Fellows and J. H. Oglesby. The first four answered that they were not indebted, had no funds etc. Oglesby answered that he held an order of date May 26th. 1875, signed by Fellows and addressed to Todd, directing the latter to deliver to Oglesby, or hold subject to his order, a previous order of Mrs. Gaines on him (Todd), dated May 30th. 1874, in which she had transferred to Fellows the remainder of the judgment in " Gaines vs. City of New Orleans." Oglesby explained in his answers that this order of Fellows was to indemnify himself and Louis Schneider " against loss or damage and liability upon, and growing out of the appeal bond signed by himself and Schneider, Irwin, and Pike as sureties of Fellows on the appeal bond furnished by him in the suit of Rhoda E. White vs. Myra Clark Gaines."

We must go back in this narrative somewhat in order to make this reference to another judgment comprehensible. Mrs. Gaines had recovered $125,266.72 with interest, from the city of New Orleans by judgment rendered in the Circuit Court of the United States, and S. M. Todd and A. Schreiber had been appointed trustees by that court for the purpose of collecting this judgment and paying $40,000 of it to James Emmott, and the residue to Mrs. Gaines or her order. She had given several orders on this fund, in aggregate more than the amount to be paid Emmott, and finally she gave Fellows an order for all the residue. That is the order of 30th. of May 1874. A year afterwards, Fellows transferred this residuum to Oglesby for the purpose above explained.

The object of these garnishments is to subject this residuum to the satisfaction of plaintiff's execution for over eighteen thousand dollars. The process is based upon the theory that the transfer or order of 30th. May 1874 was not real, and therefore Mrs. Gaines was owner of this residuum at the moment of seizure, and is now. The answers of the garnishees Oglesby and Fellows were traversed, and the simulation of the transfer was established to the satisfaction of the lower court. There was judgment accordingly, and hence this appeal.

The plea of *res judicata* is first interposed, and is based upon the following judicial proceedings.

After Mrs. Gaines had obtained the judgment against the city of New

Orleans in the U. S. Circuit Court, various parties asserted before that tribunal rights claimed by them in and upon that judgment. Among them was the present plaintiff, who claimed an older lien than any other by virtue of a mortgage of thirtieth May, 1864, which had been given by Mrs. Gaines to plaintiff and another, whose rights plaintiff had acquired, to secure the paymennt of $30,000 with interest. The contract providing for this payment was the basis of the suit in the Fifth District Court, which resulted in a judgment.

The claim of priority in lien, urged by Rhoda White in the Circuit Court because of her mortgage, was the thing to be adjudged by that tribunal. This is apparent from the opinion of the Circuit Judge delivered in support of his decree. He says,

"To secure the performance of this contract, Mrs. Gaines conveyed by said mortgage to Mack and Mrs. White all the estate, property, rights, and interests of every kind and nature, legal and equitable, real, personal, and mixed, or of any other nature and description whatsoever in or to which Mrs. Gaines is entitled, or has any claim, right title or interest, as the heir or devisee or daughter of Daniel Clark deceased, situate in the State of Louisiana. The property conveyed by this mortgage is the property which comes to her as the heir or devisee of Daniel Clark. This would include all real estate of which Clark died seized, or in which he had any interest or estate, all personal property, and choses in action of which he was possessed, and all debts and demands due him at the time of his death of whatever nature and description.

But it seems to me clear that the language used in this mortgage to describe the mortgaged property does not include the rents issues and profits of land which accrued long after the death of Clark, and long after title to the land had vested in his daughter. These rents are not derived from Daniel Clark's estate, but are the fruits of the estate of Mrs. Gaines. The rents recovered in this case are rents which accrued to Mrs. Gaines after 1834, twenty one years after Mrs. Gaines' title to the realty, out of which the rents arose, had vested in her. They are the proceeds of her own estate, and not of Daniel Clark. The rent of mortgaged property is personal property, and not capable of being mortgaged by the law of Louisiana. But even if it had been shown that the rents from real estate, devised to Mrs. Gaines by her father, was included in the terms of the mortgage, the mortgage would not have been valid as to such rents."

The Circuit Judge, proceeding to judgment, says this mortgage is not an assignment or transfer of title to any particular fund, and concludes that Mrs. White, "having reduced her claim to judgment, stands so far as the fund to be produced on this judgment is concerned, in the position of an ordinary judgment creditor of Mrs. Gaines with the right to issue

execution and seize any property belonging to her, but subject to liens and vested rights thereon existing before her levy, but she had no lien resulting from her contract and mortgage."

To establish the plea of *res judicata*, there must be an identity of parties, of capacity, of object, and of cause of action. The party most interested in the present proceeding is Oglesby, for himself and Schneider, neither of whom were parties to that of the U. S. Circuit Court. The thing demanded in that forum was the recognition of plaintiff's prior lien upon a fund, arising out of a mortgage in her favor. Here it is the right to the residuum of that fund, arising out of its seizure under a *fieri facias*, to be made effective through a personal judgment against the garnishees. Marcadé teaches—"*La cause*, qui doit être la même dans les deux demandes pour que la seconde soit écartie comme déjà jugée, c'est le principe qui engendre immédiatement le droit qu' une partie prétend exercer et que l'autre lui conteste * * * * * du reste, l' *objet* se trouve par la réponse à cette question : que demande le plaideur ? et on trouve la *cause* par la réponse à cette autre question : sur quoi le plaideur fond-t-il immédiatement sa prétention ?" Explication du Code Napoléon, tome 5. p. 152.

We do not sustain the exception of the thing adjudged, and proceed to the consideration of the question of simulation.

Mrs. Gaines thus testifies—" Mr. Fellows paid me no consideration whatever for the order of 30th. May 1874, but was to hold the same for my own use and benefit, and that he would pay me every dollar after the previous orders were paid. I had no knowledge that Mr. Fellows on the 26th. of May 1875 transferred to J. H. Oglesby the remainder and residue of said judgment. * * * I had no knowledge of said transfer, and Mr. Fellows had no right to make such transfer."

This is the version of the signer of the order. The person in whose favor the order is drawn can now be heard. His letter to Mrs. Gaines of date January 22d 1867 is as follows—" De Gray has traversed the answers of the garnishees in the Rhoda White judgment, and taken out certain proceeding against Todd and Schreiber to make them pay the whole of the Rhoda White judgment. Interrogatories for you to answer will be sent to Washington Wednesday to be used in evidence against them, and so it defeats all our claims."

These interrogatories were answered by Mrs. Gaines on 2d of February 1876, and from them the extract first given above is taken.

On 21st. of March following another letter is written by Mr. Fellows to Mrs. Gaines—" I fear you have made De Gray certain of getting his entire judgment, and had it not been for this decision of yesterday it would have ruined me. He has recorded against me and bearing against all my property that ($20,105) judgment, and is seeking for the balance

of the judgment on an execution upon his second judgment for about $19,000. I shall in that way be left in the lurch entirely and totally ruined. He will take all I ever had from you and $20,000 more with nothing more to meet it. This will be the case unless I can contradict or explain your answers in which I think you are mistaken."

In the previous December, a witness states that he was present at an interview between Mrs. Gaines and Mr. Fellows, when the latter read to the former his answers to the interrogatories addressed to himself, and which are on file, and added—" you have heard what I have sworn to, and you will probably be called upon to answer as a witness, and it is necessary that you should answer in the same manner. You must swear that I am the owner of that judgment and that it was given to me for services. Mrs. Gaines said, how can I do so when I am the owner. Fellows replied, well it is necessary you should do so. If you don't you will lose every cent of it."

The recitals of conversations between these parties by witnesses are received with circumspection, but their conformity to the contemporaneous utterances of the parties themselves cumulates the proof of the latent design of the order, whose nature we are seeking to discover. In August succeeding the date of that order Mr. Fellows writes to Mrs. Gaines a " strictly confidential" letter—" On a final distribution of the judgment against the city for rents and revenues, there will be coming to you by an outside way $3500 and probably as much more."

If the residuum of the judgment of the defendant against the city were transferred *bona fide* to Mr. Fellows, and for services rendered by him, it is not patent by what means any portion of that judgment can be coming to her in any way, and if it were meant that the outside way was to be the surrender either of part of his own fees, or of the trustees' commissions, there need not have been any special confidence enjoined touching a communication covering so benevolent a purpose.

We listened with gratification and approval to the oral comments of the counsel for the garnishees upon the pitiable spectacle presented to our view by the divulging by a client of the correspondence of her lawyer, with whom she had quarreled. However reprehensible this is, it must be remembered that in the present instance, the necessity for this disclosure was created by the correspondent himself. He had received, or was to receive, from his client $24,840.92 for fees, that being the sum assigned him on the tableau of distribution of the proceeds of the judgment against the city. When it became necessary to ascertain a consideration for the order of transfer of the residuum of that judgment, he suggested " services" as a reasonable one. His preparation of matters of fact to be verified by her oath, and his direction of her conscience to the desired end, cannot pass from our review without an expression of con-

demnation, and we believe it is an unusual feature in the correspondence of our professional brethren with their clients, to find a friendly sug-- gestion that one hopes to find some way in which the sworn statements of the other may be contradicted.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed with costs.

Rehearing refused.